**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., | : | CIVIL ACTION NO.: |
| | : | |
| *Plaintiff,* | : | 3:14-cv-00405-SRU |
| | : | |
| VS. | : | |
| | : | |
| BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., et al., | : | |
| | : | |
| *Defendants.* | : | May 22, 2014 |

**MEMORANDUM OF LAW IN SUPPORT OF THE BOEHRINGER DEFENDANTS' MOTION TO DISMISS**

Thomas D. Goldberg (ct04386)
Bryan J. Orticelli (ct28643)
DAY PITNEY LLP
One Canterbury Green
Stamford, Connecticut 06901
(203) 977-7300
(203) 977-7301 (fax)
*tgoldberg@daypitney.com*
*borticelli@daypitney.com*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..... 1
STATEMENT OF FACTS ..... 3
ARGUMENT ..... 5
A. Legal Standard ..... 5
B. PHI's Complaint Fails To State A Claim Under The TCPA Because The Challenged Fax Does Not Advertise the Commercial Availability Or Quality Of Any Property, Goods Or Services ..... 7
C. PHI's Complaint Fails To State A Claim Against BIC Because BIC Did Not Send The Fax ..... 13
CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abely v. Aeterna Zentaris, Inc.*,
No. 12 Civ. 4711, 2013 U.S. Dist. LEXIS 78388 (S.D.N.Y. May 29, 2013)....7

*Ameriguard, Inc. v. University of Kansas Medical Center Research Institute, Inc.*,
No. 06-0369, 2006 U.S. Dist. LEXIS 42552 (W.D. Mo. June 23, 2006),
*aff'd*, 222 Fed. Appx. 530 (8th Cir. 2007)....11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....6

*Carney v. Montes*,
No. 3:12-cv-00183 (SRU), 2014 U.S. Dist. LEXIS 16460 (D. Conn. Feb. 21, 2014)....6

*Coyne v. General Electric Co.*,
No. 08cv1135, 2010 U.S. Dist. LEXIS 70879 (D. Conn. July 15, 2010)....6

*Dang v. XLHealth Corp.*,
No. 1:09cv1076, 2011 U.S. Dist. LEXIS 12166 (N.D. Ga. Feb. 7, 2011)....9

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011)....7

*Malapanis v. Regan*,
340 F. Supp. 2d 184 (D. Conn. 2004), *aff'd*, 147 Fed. Appx. 219 (2d Cir. 2005)....6

*Malin v. XL Capital Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 Fed. Appx. 400 (2d Cir. 2009)....6

*Mendell v. Amgen, Inc. (In re Amgen, Inc., Securities Litigation)*,
544 F. Supp. 2d 1009 (C.D. Cal. 2008)....7

*N.B. Industries v. Wells Fargo & Co.*,
No. C 10-03203, 2010 U.S. Dist. LEXIS 126432 (N.D. Cal. Nov. 30, 2010),
*aff'd*, No. 10-17934, 2012 U.S. App. LEXIS 357 (9th Cir. Jan. 6, 2012)....12

*Phillips Randolph Enterprises, LLC v. Adler Weiner Research Chicago, Inc.*,
526 F. Supp. 2d 851 (N.D. Ill. 2007)....9

*Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*,
No. 12-2132, 2013 U.S. Dist. LEXIS 15952 (D.N.J. Feb. 6, 2013) .................................8, 12

*Physicians Healthsource Inc. v. Multiplan Services Corp.*,
No. 12-11693, 2013 U.S. Dist. LEXIS 133397 (D. Mass. Sept. 18, 2013) .....................7, 8, 9

*Sadowski v. OCO Biomedical, Inc.*,
No. 08 C 3225, 2008 U.S. Dist. LEXIS 96124 (N.D. Ill. Nov. 25, 2008) ..............................10

*Short v. Connecticut Community Bank, N.A.*,
No. 3:09-cv-1955, 2012 U.S. Dist. LEXIS 42617 (D. Conn. Mar. 28, 2012) ..........................7

*Stengel v. Medtronic, Inc.*,
676 F.3d 1159 (9th Cir. 2012), *vacated en banc on other grounds*,
686 F.3d 1121 (9th Cir. 2012) ..........................................................................................6, 7

**Statutes, Regulations. Rules**

47 U.S.C. § 227(a)(5) ..........................................................................................................2, 7

47 U.S.C. § 227(b)(1)(C) ..................................................................................................2, 7, 13

21 C.F.R. § 312.7(a) ..........................................................................................................4, 11

21 C.F.R. § 312.7(b) ..............................................................................................................4

47 C.F.R. § 64.1200(a) ...........................................................................................................7

47 C.F.R. § 64.1200(f)(1) ........................................................................................................2

47 C.F.R. § 64.1200(f)(10) ......................................................................................................13

Fed. R. Civ. P. 12(b)(6) ........................................................................................................5, 6

**Other Authorities**

FDA Guidance for Industry: *"Help Seeking" and Other Disease Awareness Communications by or on Behalf of Drug and Device Firms*, Draft Guidance issued Jan. 2004 .....................4, 5

*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005,* 71 Fed. Reg. 25,967, 25,973 (May 3, 2006) .............10, 12

Defendants Boehringer Ingelheim Pharmaceuticals, Inc. ("Boehringer") and Boehringer Ingelheim Corporation (collectively, the "Boehringer Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiff Physicians Healthsource, Inc. ("PHI").

**INTRODUCTION**

This is yet another putative class action – one of more than a dozen filed in the last two years – brought by PHI seeking statutory damages of $500 for the alleged receipt of a fax in violation of the Telephone Consumer Protection Act ("TCPA").[1] PHI allegedly received the single challenged fax on April 6, 2010 and then waited nearly four years before commencing this action on March 30, 2014, one week before the four-year statute of limitations was to run.

PHI"s challenge to this fax is misguided. The fax does not mention, much less promote, any product or service. In fact, as shown below, and as confirmed by publicly available records of which the Court may take judicial notice, at the time of the invitation there was no product to advertise. Boehringer had applied to the federal Food and Drug Administration ("FDA") for approval of a drug called "Flibanserin" to treat the disease state referenced in the fax, but that drug had not been (and still has not been) approved. Consistent with the fact that Boehringer had

[1] *See PHI v. Endo Pharm., Inc.*, No. 2:14cv2289 (E.D. Pa., filed Apr. 21, 2014); *PHI v. Masimo Corp.*, No. 8:14-cv-00001 (C.D. Cal., filed Jan. 2, 2014); *PHI v. Transcept Pharma, Inc.*, No. 14-599 (JBA) (D. Conn., transferred from N.D. Cal., filed Nov. 26, 2013); *PHI v. Purdue Pharma LP*, No. 3:12cv1208 (D. Conn., filed Aug. 17, 2012); *PHI v. Formedic Commc'ns, Ltd.*, No. 3:12cv5087 (D.N.J., filed Aug. 13, 2012); *PHI v. Stryker Sales Corp.*, No. 1:12cv729 (W.D. Mich., filed July 16, 2012); *PHI v. Cephalon, Inc.*, No. 2:12cv3753 (E.D. Pa., filed July 3, 2012); *PHI v. A-S Medication Solutions, LLC*, No. 1:12cv5105 (N.D. Ill., removed to federal court June 26, 2012); *PHI v. Alma Lasers, Inc.*, No. 1:12cv4978 (N.D. Ill., removed to federal court June 22, 2012); *PHI v. Doctor Diabetic Supply, LLC*, No. 1:12cv22330 (S.D. Fla., filed June 22, 2012); *PHI v. Reliant Techs., Inc.*, No. 1:12cv2180 (N.D. Cal., filed May 1, 2012); *PHI v. Allscripts-Misy's Healthcare Solutions, Inc.*, No. 1:12cv3233 (N.D. Ill., May 1, 2012); *PHI v. Anda, Inc.*, No. 0:12cv60798 (S.D. Fla., filed May 1, 2012).

no product to market, the fax simply invites health care providers to attend an informational session to learn more about the disease state known as Female Sexual Dysfunction ("FSD"), including Hypoactive Sexual Desire Disorder ("HSDD"). The invitation conformed to FDA guidance, which permits and even encourages the dissemination of disease and health condition information to health care practitioners, while strictly prohibiting the promotion of products that have not received agency approval.

PHI's Complaint must be dismissed for failure to state a claim upon which relief can be granted. Under the TCPA, the sending of an unsolicited facsimile may be actionable only if the facsimile constitutes an "advertisement." 47 U.S.C. § 227(b)(1)(C). An "advertisement," in turn, is material that advertises the "commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(1). PHI fails to identify any such property, goods or services that were the subject of the Boehringer invitation. Nor can it do so, since the invitation does nothing more than provide details of an informational session regarding a disease state. Flibanserin is not mentioned in the invitation and was not, and never has been, commercially available. PHI"s claim thus fails as a matter of law.

PHI's Complaint against Boehringer's parent company, Boehringer Ingelheim Corporation ("BIC"), fails for an additional reason. PHI does not allege that the fax was sent by or on behalf of BIC, and there is nothing in the Complaint or in the fax to support an allegation that BIC transmitted the facsimile. Thus, there is no plausible basis to assert that BIC "sent" the fax, as is required for liability under the TCPA.

**STATEMENT OF FACTS**

The Complaint alleges that the Boehringer Defendants sent a facsimile transmission (the "Fax") to PHI on or about April 6, 2010. (Doc. No. 1, Compl. ¶¶ 2, 13, 32.) The Fax is attached as Exhibit A to and is incorporated by reference into the Complaint. (Compl. ¶ 2; *id.* pp.14–15.)

The Fax is addressed to "Dr. Jose Martinez" and does not mention PHI. (Compl., Ex. A) The heading states: "[F]SD/[H]SDD AWARENESS DINNER MEETING. It's Time to Talk: Recognizing Female Sexual Dysfunction (FSD) and Diagnosing Hypoactive Sexual Desire Disorder (HSDD)." (*Id.*). The text of the invitation states:

> Boehringer Ingelheim Pharmaceuticals, Inc. cordially invites you to join us for a dinner meeting entitled, "*It's Time to Talk: Recognizing Female Sexual Dysfunction and Diagnosing Hypoactive Sexual Desire Disorder.*" Based on recent data from a large US study (PRESIDE), 43% of US women aged >18 years have experienced a sexual problem in their lives and 9.5% of the same group of women have experienced decreased sexual desire with distress. This program has been developed to discuss Female Sexual Dysfunction (FSD), including Hypoactive Sexual Desire Disorder (HSDD) including pathophysiological models, epidemiology, and diagnosis. We hope you will join us for this informative and stimulating program.

*Id.* (footnote citing supporting study omitted). The invitation focuses on the disease state – *i.e.*, FSD/HSDD – rather than treatment of any disease that is diagnosed. It does not identify or describe any drug or other product.

In considering this motion, the Court may take judicial notice of facts contained within the public records of the FDA. *See* pages 6-7 *infra*. Public records show that, at the time of the Fax, there was no FDA approved pharmacological product commercially available for treatment of HSDD.[2] At the time, Boehringer was pursuing FDA approval of a new product known as

---

[2] *See* Affidavit of Thomas D. Goldberg in Support of Defendants' Motion to Dismiss (hereinafter, "Goldberg Aff."), ¶ 3 & Exhibit A, Excerpts from Background Doc. for Meeting of Advisory Comm. for Reprod. Health Drugs, May 20, 2010, at p.8 § 1.4, Hypoactive Sexual Desire Disorder. Exhibit A is available in its entirety on the FDA's website.

"Flibanserin," which was developed to treat female HSDD.[3] On June 18, 2010, the FDA Advisory Committee for Reproductive Health Drugs met to discuss the Flibanserin application and concluded that Boehringer had not demonstrated that the overall risk/benefit profile of Flibanserin for the treatment of HSDD in premenopausal women was acceptable.[4] Shortly thereafter, Boehringer terminated its application for approval of Flibanserin.[5] Accordingly, Flibanserin was not and has not been commercially available from Boehringer.

The fact that the Fax did not promote Flibanserin was not accidental, and had nothing to do with the TCPA. Under FDA regulations, a sponsor "shall not commercially distribute or test market an investigational new drug," 21 C.F.R. § 312.7(b) (emphasis added), and "shall not represent in a promotional context that an investigational new drug is safe or effective for the purposes for which it is under investigation or otherwise promote the drug." *Id.* § 312.7(a) (emphasis added). By the same token, the regulation does not proscribe so-called "disease awareness communications." In fact, the FDA has issued non-binding guidance that "disease awareness communications can provide important health information to consumers and health care practitioners, and can encourage consumers to seek, and health care practitioners to provide, appropriate treatment." *See* FDA Guidance for Industry: *"Help Seeking" and Other Disease Awareness Communications by or on Behalf of Drug and Device Firms*, Draft Guidance issued

---

[3] *See id.*at 7; *see also* Goldberg Aff. ¶ 4 & Exhibit B, Excerpts from Flibanserin Briefing Doc., May 14, 2010, at p.17 § 1, Exec. Summary. Exhibit B is available in its entirety on the FDA's website.

[4] *See* Goldberg Aff. ¶ 5 & Exhibit C, Summary Minutes of the Advisory Comm. for Reprod. Health Drugs, June 18, 2010). Exhibit C is available in its entirety on the FDA's website.

[5] *See* Goldberg Aff. ¶ 6 & Exhibit D, FDA Investigational New Drug Appl., Termination of Drug Dev. Prog., Oct. 7, 2010. On information and belief, a copy of Exhibit D is maintained as an official record in the FDA's files reflecting Boehringer's termination of drug development for Flibanserin as treatment for HSDD. Goldberg Aff. ¶ 6.

Jan. 2004, ("Guidance"), at p.1.[6] The Guidance characterizes "Disease Awareness Communications," with respect to communications addressed to health care practitioners, as those that "discuss a disease or health condition," "encourage awareness of signs of the particular disease," "do not mention a particular drug," and "do not include any representation or suggestion relating to a particular drug." *Id.* at p.3.

Notwithstanding that neither the Complaint nor the Fax identifies or describes any product, much less a commercially available product, PHI alleges in conclusory fashion that "[t]he Fax constituted an advertisement under the Act" (Compl. ¶ 32) and that "Exhibit A is part of Defendants' work or operations to market Defendants' goods or services." (*Id.* ¶ 15.) PHI seeks to represent a putative class comprised of all persons who within four years of the filing of the action "were sent telephone facsimile messages of material advertising the commercial availability of any property, goods or services by or on behalf of Defendants," and did not display a proper opt-out notice. (*Id.* ¶ 20.) The Complaint seeks among other things certification that the case may proceed as a class action, an award of at least $500 for each TCPA violation, and injunctive relief. (*Id.* p.12 ¶¶ A–D.)[7]

**ARGUMENT**

**A. Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive

[6] A copy of the Guidance is attached as Exhibit E to the Goldberg Affidavit, and is available in its entirety on the FDA's website. Goldberg Aff. ¶ 7. The Guidance was issued in draft form, but remains the most current communication from the FDA on this topic.

[7] On the same day it filed the Complaint, plaintiff also moved for class certification and for a temporary stay of further proceedings on that motion (Doc. 4). The class action allegations are patently deficient and the Boehringer Defendants are today filing an objection to that motion.

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The complaint must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to 'provide the grounds of his entitlement to relief' through more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Carney v. Montes*, No. 3:12-cv-00183 (SRU), 2014 U.S. Dist. LEXIS 16460, at *6 (D. Conn. Feb. 21, 2014) (quoting *Twombly*, 550 U.S. at 555).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court considers the "facts stated in the complaint [and] in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Malapanis v. Regan*, 340 F. Supp. 2d 184, 191 n.1 (D. Conn. 2004) (internal quotation marks and citation omitted), *aff'd*, 147 Fed. Appx. 219 (2d Cir. 2005). Thus, the Court may consider the contents of the Fax that is referenced in and attached to the Complaint.

The court also may consider those facts outside of the complaint of which it may take judicial notice. *Coyne v. Gen. Electric Co.*, No. 08cv1135, 2010 U.S. Dist. LEXIS 70879, at *11 (D. Conn. July 15, 2010); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 129 (D. Conn. 2007), *aff'd*, 312 Fed. Appx. 400 (2d Cir. 2009) (stating that courts can consider facts of which judicial notice may be taken when ruling on motions to dismiss pursuant to Rule 12(b)(6)). This includes public records of the FDA. For example, in *Stengel v. Medtronic, Inc.*, 676 F.3d 1159 (9th Cir. 2012), *vacated en banc on other grounds*, 686 F.3d 1121 (9th Cir. 2012), the court held that the

district court properly took judicial notice of the fact that the defendant had received pre-market approval from the FDA of the product at issue, and explained: "Because the accuracy of FDA records cannot reasonably be questioned, . . . fact[s] [within FDA records are] subject to judicial notice." *Id.* at 1167. *See also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (district court did not err in taking judicial notice of the fact that the FDA had issued pre-market approval of defendant's product); *Abely v. Aeterna Zentaris, Inc.*, No. 12 Civ. 4711, 2013 U.S. Dist. LEXIS 78388, at *65 (S.D.N.Y. May 29, 2013) ("[T]he Court relie[s] on FDA [documents] . . . available through the [FDA] website. These documents . . . are published by government sources from which the Court may appropriately take judicial notice."); *Mendell v. Amgen, Inc. (In re Amgen, Inc., Sec. Litig.)*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (taking judicial notice of facts available from FDA's website); *see also Short v. Conn. Cmty. Bank, N.A.*, No. 3:09-cv-1955, 2012 U.S. Dist. LEXIS 42617, at *23 (D. Conn. Mar. 28, 2012) ("This Court may take judicial notice of . . . a public record of a federal regulatory agency available on the [agency's] website . . . .").

### B. PHI's Complaint Fails To State A Claim Under The TCPA Because The Challenged Fax Does Not Advertise the Commercial Availability Or Quality Of Any Property, Goods Or Services.

The TCPA prohibits using a telephone facsimile machine to send an "unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C); 47 C.F.R. § 64.1200(a). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). "Commercial availability means a good or service is 'available to be bought or sold (or must be a pretext for advertising a product that is so available).'" *PHI v. Multiplan Servs. Corp.*, No. 12-11693, 2013

U.S. Dist. LEXIS 133397, at *3 (D. Mass. Sept. 18, 2013) (quoting *N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 Fed. Appx. 640, 642 (9th Cir. 2012)).

Where a fax is informational, and does not advertise property, goods or services, the fax does not constitute an "advertisement" and thus does not give rise to a claim under the TCPA. Two recent decisions dismissing complaints filed by PHI illustrate this point. First, in *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, No. 12-2132, 2013 U.S. Dist. LEXIS 15952 (D.N.J. Feb. 6, 2013), PHI challenged faxes informing the recipient that a drug manufactured by the defendant had been reclassified for insurance purposes, and indicating when the reclassified drug would be generally available. *Id.* at *2–3, *10–15. The court held that the faxes were not advertisements because they did not promote the commercial availability or quality of the drug, but rather informed the recipient of the drug's reclassification and when the drug would be available on the market. *Id.* at *15. The court rejected PHI's argument that the court should inquire whether the fax would provide "an ancillary commercial benefit" to the defendant, and explained that the relevant "inquiry under the TCPA is whether the <u>content of the message</u> is commercial, not what predictions can be made about future economic benefits." *Id.* at *15-16 (emphasis added). The court concluded: "Given that the faxes . . . lack[ed] any commercial statement . . . , they [could not] be considered as advertisements under the TCPA." *Id.* at *24.

Similarly, in *Physicians Healthsource Inc. v. Multiplan Services Corp.*, 2013 U.S. Dist. LEXIS 133397, the court considered a fax sent to a chiropractor by the defendant, an organization that "facilitates networks of health care providers to treat insured patients." *Id.* at *1–2. The fax informed recipients of available networks and how to use those networks to get access to insured patients. *Id.* at *2. PHI claimed that the fax was an advertisement because it

promoted the commercial availability of the defendant's networking services. *Id.* at *4. The defendant moved to dismiss, arguing that the fax was not an advertisement because it did not "purport to sell [the defendant's] goods or services" to the recipient. *Id.* The court agreed and dismissed PHI's complaint, holding that the fax was not an advertisement. *Id.* at *3–4. In so ruling, the court emphasized that the TCPA applies only to unsolicited faxes that advertise a "good or service [that] is 'available to be bought or sold.'" *Id.* at *3 (citation omitted). Because the fax did not purport to sell a good or service to the recipient, it was not an advertisement, and PHI's TCPA claims failed as a matter of law. *Id.*

The same result has been reached in a number of other cases. For example, in *Dang v. XLHealth Corp.*, No. 1:09cv1076, 2011 U.S. Dist. LEXIS 12166 (N.D. Ga. Feb. 7, 2011), a preferred provider organization faxed a chiropractor an invitation to attend a free seminar. *Id.* at *11–12. The seminar offered information to attendees about the organization's billing processes and how those processes could help "speed up" payments from patients. *Id.* at *11. The court ruled that the fax was not an advertisement. *Id.* It reasoned that, "[i]nstead of 'promoting goods and service's in the commercial sense," the fax "alerted the recipient [to] a free seminar. . ., wherein the recipient could learn more about the" organization's billing processes. *Id.* There was nothing in the fax that purported to sell the organization's products or services to the recipient, nor did the fax promote the benefits of a commercial transaction with the organization. *Id.* at *11–12. As the court emphasized, a fax must "promote [the] goods and services" of the sender to be considered an advertisement under the TCPA. *Id.* at *10. *See also Phillips Randolph Enters., LLC v. Adler Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (fax inviting physicians to participate in a "research discussion" on a healthcare program was not an advertisement, as the promoted event was a research study, not a

"commercially available service"); *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005* (hereinafter, "*Rules & Regulations*"), 71 Fed. Reg. 25,967, 25,973 (May 3, 2006) ("[F]acsimile communications that contain only information . . . [are] not prohibited by the TCPA.").

For comparison, the court in *Sadowski v. OCO Biomedical, Inc.*, No. 08 C 3225, 2008 U.S. Dist. LEXIS 96124 (N.D. Ill. Nov. 25, 2008), denied a motion to dismiss after concluding that the fax at issue was an advertisement. In contrast to the cases where the faxes were primarily informational, in that case the fax invited dentists to a training course regarding the sender's products. The court found that the training course was a commercially available service of the defendant, and that the fax promoted both the commercial availability of dental implants sold by the defendant and the quality of the course by claiming that recipients could increase their profitability by attending. *Id.* at *6.

In this case, the Fax does not meet the statutory definition of an "unsolicited advertisement" as a matter of law. "Commercial availability" is pivotal to PHI's claims, as it recognizes in defining its putative class to include only those persons who received faxes "advertising the commercial availability of any property, goods or services by or on behalf of Defendants." (Compl. ¶ 20 (emphasis added).) Yet PHI fails to identify any "commercially available" product that was or could have been the subject of the Fax, and of course cannot do so because the compound that Boehringer developed, Flibanserin, had not been approved by the FDA and could not be sold or marketed.[8]

---

[8] In this and other cases, PHI has alleged a violation of an FCC regulation that has been construed to apply even where the fax was sent with consent and therefore was not "unsolicited." There is a substantial issue whether that regulation is enforceable given that Congress authorized the FCC only to regulate unsolicited faxes. That issue has been raised in a number of petitions pending before the FCC. *See* Docket Entry Number 101, Ruling on Motion to Stay, *Physicians*

Consistent with the fact that Boehringer had no commercially available product to market, the Fax on its face is plainly informational. The topic is "[F]SD/[H]SDD Awareness." The invitation indicates that the dinner meeting will include a "discuss[ion] of the disease states, "including pathophysiology models, epidemiology, and diagnosis"; and concludes that "[w]e hope you will join us for this informative and stimulating program." (Compl., Ex. A pp.14–15.) The Fax does not identify a product, does not describe a product, does not reference the commercial availability of any product, and does not announce that Boehringer "is providing or otherwise has available goods, services, or property" to treat FSD or HSDD. *Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc.*, No. 06-0369, 2006 U.S. Dist. LEXIS 42552, at *3–4 (W.D. Mo. June 23, 2006), *aff'd*, 222 Fed. Appx. 530 (8th Cir. 2007). Simply put, consistent with 21 C.F.R. § 312.7(a), the Fax did not "promote" any drug. To the contrary, the dinner program identified in the Fax is fully consistent with the type of informational disease awareness communications that are permitted and even encouraged by the FDA regulations: the program was intended to discuss a disease condition and encourage awareness of signs of the disease, but did not mention a particular drug or include any representation or suggestion relating to a particular drug. *See* Goldberg Aff. Exhibit E, at 3; *see also id.* ("This kind of [informational] communication constitutes neither labeling nor advertising and is, therefore, not subject to the requirements for the disclosure of risk information and other requirements under the [FDA] act.").

To be sure, one may infer that Boehringer had a business purpose in setting up the dinner program referred to in the Fax. For example, by educating health care providers about the

---

*Healthsource, Inc. v. Purdue Pharma L.P.*, Civ. No. 12-1208-SRU (D. Conn. Feb. 3, 2014). Even if that regulation were found to be enforceable, however, it applies only to an "advertisement." Because the Fax at issue here is not an "advertisement," PHI would have no claim for relief under either the statute or the regulation.

disease state and issues with respect to diagnosis of the disease state, providers would have a more informed basis for determining whether to prescribe Flibanserin if and when the drug was approved by the FDA. But as the court explained in *Janssen Pharmaceuticals, Inc.*, such an "ancillary commercial benefit" is not sufficient to meet the statutory definition:

> [T]he potential to gain some benefit from sending information, without the presence of additional commercial statement in the message, is insufficient to transform an informational message to an advertisement. The appropriate inquiry under the TCPA is not whether there is some ancillary commercial benefit to either party, but whether the message is an advertisement which tends to propose a commercial transaction.

2013 U.S. Dist. LEXIS 15952, at *15 (emphasis added). *See also Ameriguard*, 2006 U.S. Dist. LEXIS 42552, at *3–4 ("The critical issue is whether the fax advertises the commercial availability of goods, services, or property. . . . "[T]here is no suggestion Defendant [used] the [fax] as a smokescreen to mask [the] true purpose of . . . selling medicine.") (internal quotation marks and citation omitted).[9]

We are aware that this Court orally denied in part a motion to dismiss in *Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, Civ. No. 12-1208-SRU (D. Conn.), stating "I think these faxes cannot be held to be something other than advertisements as a matter of law." (Doc. No. 90, Transcript of Motion Hearing dated May 21, 2013, at 39; see also Doc. No. 84, Courtroom Minutes dated May 21, 2013.) The faxes at issue in that case, however, are distinguishable from the one at issue here. The challenged faxes in *Purdue Pharma* explicitly

---

[9] The fact that Boehringer's name and logo appear on the Fax also is not sufficient to render the material an "advertisement." *See N.B. Indus. v. Wells Fargo & Co.*, No. C 10-03203, 2010 U.S. Dist. LEXIS 126432, at *21 (N.D. Cal. Nov. 30, 2010) ("inclusion of [the defendants'] logos and website addresses is incidental information that does not transform the messages into advertisements"), *aff'd*, No. 10-17934, 2012 U.S. App. LEXIS 357 (9th Cir. Jan. 6, 2012); *Janssen Pharm.*, 2013 U.S. Dist. LEXIS 15952, at *16 ("I find unpersuasive Plaintiff's argument that the use of Defendants' name and marketing logos is sufficient to transform the fax into an advertisement."); *Rules & Regulations*, 71 Fed. Reg. at 25,973.

stated that the program was a "promotional event" and that the presentation would address the use of a particular product (a "long-acting opioid") in the treatment of moderate to severe pain. (*See, e.g., id.* Doc. 69-1, at p. 1 (filed Feb. 8, 2013)).[10] It also referred explicitly to Purdue's "sales and marketing practices." (*Id.*) The event described in the Fax in this case, by contrast, was "informative" rather than promotional and did not suggest that particular treatments would be discussed. Most importantly, the Fax did not describe or identify a product for treatment of the disease because no such product had been approved by the FDA. Thus, PHI cannot plausibly allege the existence of a commercially available product that the Fax could have been construed to promote.

Accordingly, the Complaint fails to state a claim for relief under the TCPA.

### C. PHI's Complaint Fails To State A Claim Against BIC Because BIC Did Not Send The Fax.

Plaintiff's claim against BIC fails for an additional reason. TCPA liability may be imposed only upon a sender of an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). The sender of an unsolicited advertisement is "the person or entity on whose behalf a[n] . . . unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). The Fax communicates an invitation from "Boehringer Ingelheim Pharmaceuticals, Inc." but makes no reference to Boehringer's parent company, BIC. Thus, there is no plausible basis to allege that BIC was the sender of the Fax, and no basis for holding BIC liable under the TCPA.

---

[10] For convenience, representative copies of the faxes annexed to the Amended Complaint in *Purdue Pharma* are attached as Exhibit F to the Goldberg Affidavit.

## CONCLUSION

The Court should grant the motion and dismiss the Complaint against the Boehringer Defendants for failure to state a claim.

                    DEFENDANTS,
                    BOEHRINGER INGELHEIM
                    PHARMACEUTICALS, INC., and
                    BOEHRINGER INGELHEIM CORPORATION,

By:   /s/ Thomas D. Goldberg
       Thomas D. Goldberg (ct04386)
       Bryan J. Orticelli (ct28643)
       DAY PITNEY LLP
       One Canterbury Green
       Stamford, Connecticut 06901
       (203) 977-7300
       (203) 977-7301 (fax)
       *tgoldberg@daypitney.com*
       *borticelli@daypitney.com*

       Their Attorneys

**CERTIFICATION**

I hereby certify that on this date, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

/s/ Thomas D. Goldberg
Thomas D. Goldberg (ct04386)