UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Physicians Healthsource, Inc.,
    Plaintiff,

    v.

Boehringer Ingelheim Pharmaceuticals,
Inc., et al.,
    Defendants.

No. 3:14-cv-405 (SRU)

**RULING ON DEFENDANTS' MOTIONS TO DISMISS**

    This lawsuit is brought by Physicians Healthsource, Inc. ("PHI"), on behalf of itself and others similarly situated, against Medica, Inc. and Boehringer Ingelheim Pharmaceuticals, Inc. and its parent company Boehringer Ingelheim Corporation ("BIC") (collectively, the "Boehringer defendants") for violations of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Protection Act of 2005, 47 U.S.C. § 227 (the "TCPA").  Medica sent a fax inviting Dr. Jose Martinez of PHI to a dinner sponsored by Boehringer, which PHI alleges violated the TCPA.  Now before me are the defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6) (docs. # 19 & 22), both of which assert that the fax is not an "advertisement."  The Boehringer defendants also move to dismiss BIC as a party, because there is no indication that the fax was sent by or on behalf of BIC.  For the reasons discussed below, the defendants' motions are GRANTED.

**I.    Background[1]**

    On or about April 6, 2010, Medica sent a facsimile transmission (the "Fax") to Dr. Martinez.  The Fax, which is attached to the complaint, is an invitation to an "awareness dinner

---

[1]The following facts are drawn from the Complaint and the Exhibits attached thereto.

1

meeting" to be held at McCormick & Schmick in Cincinnati, Ohio. Boehringer Ingelheim Pharmaceuticals is listed as the sole sponsor of the dinner. The invitation states:

> Boehringer Ingelheim Pharmaceuticals, Inc. cordially invites you to join us for a dinner meeting entitled, *It's Time to Talk: Recognizing Female Sexual Dysfunction and Diagnosing Hypoactive Sexual Desire Disorder.* Based on recent data from a large US study (PRESIDE), 43% of US women aged > 18 years have experienced a sexual problem in their lives and 9.5% of the same group of women have experienced decreased sexual desire with distress. This program has been developed to discuss Female Sexual Dysfunction (FSD), including Hypoactive Sexual Desire Disorder (HSDD) including pathophysiology models, epidemiology, and diagnosis. We hope you will join us for this informative and stimulating program.

The only other information on the Fax relates to logistics, including the time, date, and location and the process for registering for the dinner meeting. The Fax does not name any product designed to treat FSD/HSDD. It does not mention treatment of the disorders at all.

PHI asserts that the Fax was part of the defendants' "work or operations to market [their] goods or services" and that it was sent without PHI's prior express invitation or permission without a proper opt-out notice.[2] Although PHI received no additional faxes from the defendants, PHI avers, upon information and belief, that the defendants sent similar faxes to more than 40 individuals/entities.

## II.     Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

---

[2] The fax did contain an opt-out notice, which stated: "to be removed from the fax list, please initial here____and fax this form back" to the defendants. The defendants indicate that the Fax was not "unsolicited" and that the FCC might have exceeded its authority by enacting rules that regulate solicited faxes; however, those arguments do not form the basis of their motions to dismiss.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). If a court relies on matters outside the pleadings in its consideration of a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

## III.   Discussion

The TCPA generally makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or

permission, in writing or otherwise." 47 U.S.C. § 277(a)(5); 47 C.F.R. § 64.1200(f)(15). "Congress enacted the TCPA to prevent the shifting of advertising costs to recipients of unsolicited fax advertisements." *Physicians Healthsource, Inc. v. Alma Lasers, Inc.*, No. 12-CV-4978, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012) (citing H.R. Rep. No. 317 (1991)).

In determining whether a fax constitutes an "advertisement" under the TCPA, "it is appropriate for the Court to adopt a reasonable construction of the TCPA promulgated by the [FCC]." *Holmes v. Back Doctors, Ltd.*, No. 09-CV-540, 2009 WL 3425961, at *2 (S.D. Ill. Oct. 21, 2009) (citing *United States v. Mead Corp.*, 533 U.S. 218, 229-31 (2001)); *see also Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 282 (S.D.N.Y. 2013) (citing *Holmes*). The FCC rules emphasize that: "messages that do not promote a commercial product or service . . . are not unsolicited advertisements under the TCPA." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prevention Act of 2005*, 21 F.C.C. Rcd. 3787, 3810 (2006). "[F]acsimile messages that promote goods or services even at no cost, such as . . . free consultations or seminars," however, are included within the category of unsolicited advertisements. *Id.* at 3814. Faxes promoting free seminars are treated as advertisements, because "[i]n many instances, 'free' seminars serve as a pretext to advertise commercial products and services . . . . Based on this, it is reasonable to presume that such [facsimile] messages describe the 'quality of any property, goods, or services.'" *Id.* (quoting 47 U.S.C. § 227(a)(5)). Thus, in the absence of an established business relationship, such faxes cannot be sent without permission under the TCPA unless they are "purely transactional" in nature – i.e., communications designed to "facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into." *Id.* at 3812-14.

4

Faxes "that contain only information, such as industry news articles, legislative updates, or employee benefit information," by contrast, are not unsolicited advertisements under the TCPA.[3] *Id*. at 3814. Similarly, "notifications concerning the existence of an opportunity," such as the existence of a job opening or a research study, are not prohibited by the TCPA rules. *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. CIV.A. 12-2132 FLW, 2013 WL 486207, at *4 (D.N.J. Feb. 6, 2013), *reconsideration denied*, No. CIV.A. 12-2132 FLW, 2013 WL 2460345 (D.N.J. June 6, 2013) (internal citations omitted); *see also Phillips Randolph Enter., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851, 853 (N.D. Ill. 2007) (fax inviting participation in research study not an "advertisement"). In analyzing whether a fax crosses the line from "informational" to "advertisement," courts should consider "whether the message is an advertisement which tends to propose a commercial transaction," "not whether there is some ancillary commercial benefit to either party." *Janssen Pharm.*, 2013 WL 486207 at *4 (citing *Lutz Appellate Serv., Inc.*, 859 F. Supp. 180, 181 (E.D. Pa. 1994)); *N.B. Indus. v. Wells Fargo & Co.*, No. C 10-03203 LB, 2010 WL 4939970, at *10 (N.D. Cal. Nov. 30, 2010), *aff'd sub nom. N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640 (9th Cir. 2012) ("The inquiry

---

[3] The FCC has also clarified that "[a]n incidental advertisement contained in a newsletter does not convert the entire communication into an advertisement." 21 F.C.C. Rcd. at 3814. The determination whether an advertisement is incidental to an informational communication is made on a case-by-case basis considering, among other factors the amount of space devoted to advertising versus information or "transactional" messages, "whether the advertising is on behalf of the sender of the communication," and "whether the advertisement is to a *bona fide* 'informational communication.'" *Id.* at 3818 n. 187. In determining whether the advertisement is to a *bona fide* "informational communication," the FCC considers: (1) "whether the communication is issued on a regular schedule"; (1) "whether the text of the communication changes from issue to issue"; and (3) "whether the communication is directed to specific regular recipients, *i.e.,* to paid subscribers or to recipients who have initiated membership in the organization that sends the communication." *Id.* It is not necessary to consider the effect of "incidental advertisements" in this case, however, because other than the Boehringer logo nothing on the face of the fax could be interpreted as an advertisement for Boehringer. As many courts have pointed out, the appearance of a defendant's logo, without more does not transform an informational message to an advertisement; indeed, the TCPA actually requires the sender's name appear on the fax. *See* 47 U.S.C. § 227(d)(1); *Holmes*, 2009 WL 3425961 at *4; *Janssen Pharm.*, 2013 WL 486207 at *5.

is not whether there is an ancillary commercial benefit to either party but instead is whether the message is an advertisement (or a pretext for an advertisement)."). Put another way, "the inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits." *Janssen Pharm.*, 2013 WL 486207 at *5.

Although the FCC's rules "could be read to categorize all faxes promoting free seminars as unsolicited advertisements," courts typically require plaintiffs to show that the fax has a commercial pretext – i.e., "that the defendant advertised, or planned to advertise, its products or services at the seminar." *Bais Yaakov of Spring Valley v. Richmond, the Am. Int'l Univ. in London, Inc.*, No. 13-CV-4564 CS, 2014 WL 4626230, at *3 (S.D.N.Y. Sept. 16, 2014) (citing *N. Suburban Chiropractic Clinic, Ltd. v. Merck & Co.*, No. 13–CV–3113, 2013 WL 5170754, at *3 (N.D. Ill. Sept. 13, 2013); *St. Louis Heart Center, Inc. v. Forest Pharms., Inc.*, No. 12–CV–2224, 2013 WL 1076540, at *4 (E.D. Mo. Mar. 13, 2013); *Alma Lasers*, 2012 WL 4120506 at *2; *Phillip Long Dang v. XLHealth Corp.*, No. 09–CV–1076, 2011 WL 553826 at *4 (N.D. Ga. Feb. 7, 2011) (fax advertising free seminar not "unsolicited advertisement" where it was "not pretext for a commercial enterprise")). This interpretation conforms with both the statutory text, which prohibits the "unsolicited" sending of "material advertising the commercial availability or quality of any property, goods, or services" and the FCC's own interpretation of the TCPA, which excludes "messages that do not promote a commercial product or service" from the definition of unsolicited advertisements. *See id.*; *Phillip Long Dang*, 2011 WL 553826 at *4.

Here, the Fax is an invitation to a free dinner meeting about diagnosing FSD/HSDD. PHI asserts that the Fax violates the TCPA because the Fax had a dual informational and advertising purpose. At the time the Fax was sent, the Boehringer defendants were developing a drug,

Flibanserin, designed to treat HSDD.[4]  PHI argues that Boehringer sought to "exploit an untapped part of the drug market" and its invitation "to an expensive dinner" that would "[place] those making up the supply and demand for HSDD drugs in one room" formed part of its strategy for doing so.  Pl.'s Opp. 3-4, 7.  Moreover, though the Fax appears informational on its face, the PRESIDE study mentioned in it was funded by Boehringer and the speaker at the dinner, David Portman, had participated in research for a HSDD drug.  *Id.*

These links to treatment of HSDD, PHI argues, distinguish the Fax from those that courts have found to be "informational" in nature.  *See, e.g.*, *Ameriguard, Inc. v. Univ. of Kansas Med. Ctr. Research Inst., Inc.*, No. 06-0369-CV-W-ODS, 2006 WL 1766812, at *1 (W.D. Mo. June 23, 2006), *aff'd*, 222 F. App'x 530 (8th Cir. 2007) (invitation to participate in clinical research trial was not an advertisement); *Janssen Pharm.*, No. 2013 WL 486207 at *5 (information about reclassification of a drug was not an advertisement).  PHI argues that, under the FCC rules, as interpreted by the federal courts, it is plausible that the Fax was promotional, or at least that the dinner was a pretext to market Boehringer's new HSDD drug.  *See, e.g.*, *St. Louis Heart Center*, 2013 WL 1076540 at *3-4 (invitation to medical discussion regarding treatment of hypertension, which included label and prescribing information for defendant's drug used to treat hypertension, contained "enough in the way of product-driven content . . . to raise an issue of fact whether a 'medical discussion regarding the treatment of hypertension' is tantamount to a free seminar serving as 'a pretext for advertising goods and services'"); *Addison Automatics, Inc. v. RTC*

---

[4] Both sides have attached information that is not referenced to in the complaint.  The parties agree that I can take judicial notice of all of the attached information, because it is from official company and agency websites.  Thus, this information can be considered on a 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (court may consider "matters of which judicial notice may be taken" on motion to dismiss without converting it to motion for summary judgment); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 129 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) (same).

*Grp., Inc.*, No. 12-CV-9869, 2013 WL 3771423, at *3 (N.D. Ill. July 16, 2013) (free "technical seminar" on embedded computer technology plausibly would have been used to market defendants' products and services, where seminar specifically provided training on defendants' products and recipients of fax invitation had to visit products' website in order to register); *see also N. Suburban Chiropractic*, 2013 WL 5170754 at *4 (plausible to conclude defendant's fax invitation to free webcast was pretext to market its goods and services where recipients had to register at defendant's corporate website and registration required participants to agree that defendant could contact them in future regarding product information, special offers, etc.).

The defendants counter that the Fax did not and could not have advertised the commercial availability of any goods. Flibanserin had not been (and never was) approved by the FDA and therefore was not commercially available at the time of the dinner. FDA regulations prohibit manufacturers like Boehringer from "promoting" a drug that has not been approved. 21 C.F.R. § 312.7(a). Nothing in the complaint indicates that Boehringer failed to comply with applicable FDA regulations prohibiting the promotion of a drug that was not yet approved. Thus, the defendants argue, PHI cannot plausibly allege that the Fax advertised the commercial availability of any goods or served as a pretext for advertising any goods. The defendants assert that the dinner meeting was akin to a "disease awareness communication," which the FDA defines as a communication that "encourage[s] awareness of signs of [a] particular disease or health condition, or otherwise provide[s] information to assist in the diagnosis of the particular disease or health condition." *See* Boehringer Defs.' Ex. E at 3 (doc. # 23-6). The FDA permits disease awareness communications, as long as they do not "mention a particular drug or device" or "include any representation or suggestion relating to a particular drug or device." *Id*.

In further support of their argument, the defendants contrast the Fax with those in *Physicians Healthsource, Inc. v. Purdue Pharma, LP, et al.*, No. 12-CV-1208-SRU, which I held were advertisements as a matter of law. *See* Hr'g Tr. 39, May 21, 2013 (doc. # 90). In *Purdue*, the faxes, which were invitations to dinners and web seminars, included the language "this is a promotional event," and stated: "Purdue is firmly committed to maintaining the highest standards of sales and marketing practices in the industry while continuing to advance the proper treatment of patients." Moreover, the dinner/seminar topics were titled: "Practical Applications to Support Appropriate Treatment of Chronic Pain with a Long Acting Opioid" and "Announcing a Transdermal System for Moderate to Severe Chronic Pain," and both programs involved "a case-based presentation with a pain management expert." Here, by contrast, there is no mention of the dinner being "promotional" in nature and the topic is limited to diagnosing FSD/HSDD, not treating those conditions.

I am persuaded that this case is distinguishable from *Purdue* and others where courts have held that fax invitations to discussions or seminars plausibly or actually were "unsolicited advertisements." Nothing in the Fax indicates that the dinner was a pretext for pitching a Boehringer product or service related to FSD/HSDD or links the potential registrant with Boehringer's other products and services. *Cf., e.g.*, *St. Louis Heart Center*, 2013 WL 1076540 at *3-4; *Addison Automatics.*, No. 12-CV-9869, 2013 WL 3771423 at *3; *Sadowski v. OCO Biomedical, Inc.*, No. 08 C 3225, 2008 WL 5082992, at *1 (N.D. Ill. Nov. 25, 2008) (fax inviting recipient to $295 training course on installation of defendant's dental implant system was advertisement, because training course was a service and fax promoted quality of that service, and fax also advertised commercial availability of defendant's product); *see also* Pl.'s Opp. Ex. L at 2 (Order in *Physicians Healthsource, Inc. v. Cephalon*, No. 12-CV-3753-LDD (E.D. Pa.

9

Oct. 11, 2012) (denying motion to dismiss, because invitation to lunch/dinner seminars discussing pain medications produced by defendant drug company plausibly was an advertisement)). Moreover, under the circumstances PHI cannot raise its assertions above the speculative level simply by asserting that the dinner was part of the defendants' "work or operations to market [their] goods or services," because Boehringer did not have a product designed to treat FSD/HSDD. *Cf. N. Suburban Chiropractic*, 2013 WL 5170754 at *3 (holding it was plausible to conclude defendant's fax invitation to free webcast was pretext to market its goods and services where plaintiff alleged that webcast was part of defendant's "work or operations" and information in fax actually linked recipients with defendant's products); *Alma Lasers*, 2012 WL 4120506 at *1 (same).

Even drawing the inference that Boehringer sponsored the dinner in order to inform potential future prescribers of Flibanserin about the existence and nature of HSDD, the hypothetical future economic benefit that the Boehringer defendants might receive someday does not transform the Fax into an advertisement. *See Janssen Pharm.*, 2013 WL 486207 at *4. Given that Boehringer's HSDD drug was not yet FDA-approved, and the topic of the dinner was limited to diagnosis of FSD/HSDD and not treatment of the conditions, it is not plausible to conclude that the dinner "serve[d] as a pretext to advertise commercial products and services." 21 F.C.C. Rcd. at 3814.

The defendants' motions to dismiss are granted. The dismissal of the complaint is with prejudice, because plaintiff's counsel was unable at oral argument to articulate any additional facts that could be alleged that would transform the complaint into a plausible TCPA claim. If the plaintiff does have any additional facts to allege that bear on the plausibility of its claim, it

should set forth those facts in a motion for reconsideration and should file that motion within fourteen days of this order. I will then happily reconsider this ruling.

## IV. Conclusion

For the foregoing reasons, the motions to dismiss are GRANTED. The clerk shall enter judgment for the defendants and shall close this case.

It is so ordered.

Dated at Bridgeport, Connecticut this 12th day of January 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge