**MANDATE**

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

_____

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of February, two thousand and seventeen.

Before:    Ralph K. Winter,
           Dennis Jacobs,
           Pierre N. Leval,
                        *Circuit Judges.*
_____

Physicians Healthsource, Inc., an Ohio Corporation,
individually and as the representative of a class of
similarly-situated persons,

           Plaintiff - Appellant,           **JUDGMENT**
                                                Docket No. 15-288

v.

Boehringer Ingelheim Pharmaceuticals, Inc.,
Boehringer Ingelheim Corporation, Medica, Inc.,

           Defendants - Appellees,

John Does, 1-10,

           Defendants.
_____

The appeal in the above captioned case from a judgment of the United States District Court for the District of Connecticut was argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's judgment is VACATED and the case is REMANDED for further proceedings consistent with the Court's Opinion.

For The Court:

Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe*

*Catherine O'Hagan Wolfe*

**MANDATE ISSUED ON 03/09/2017**

**15-288-cv**
**Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,**

1            UNITED STATES COURT OF APPEALS

2              FOR THE SECOND CIRCUIT

3                August Term, 2015

4    (Argued: September 29, 2015        Decided: February 3, 2017)

5                Docket No.  15-288-CV

6    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

7    Physicians Healthsource, Inc.,
8
9          <u>Plaintiff-Appellant</u>,
10
11              v.
12
13   Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim
14   Corporation, Medica, Inc.
15
16          <u>Defendants-Appellees</u>,
17
18   John Does, 1-10,
19
20          <u>Defendants</u>.
21
22   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
23
24   B e f o r e:   WINTER, JACOBS, and LEVAL, <u>Circuit</u> <u>Judges</u>.

25        Appeal from a grant by the United States District Court for

26   the District of Connecticut (Stefan R. Underhill, <u>Judge</u>) of a

27   Rule 12(b)(6) motion dismissing a complaint asserting violations

28   of the Telephone Consumer Protection Act of 1991, as amended by

29   the Junk Fax Protection Act of 2005, 47 U.S.C. § 227.  The

30   principal issue is whether an unsolicited fax inviting doctors to

31   a free dinner meeting featuring a discussion of an ailment -- to

32   which an upcoming product, as yet unapproved by the FDA, was

1

aimed -- was an "unsolicited advertisement."  We vacate and
remand.  Judge Leval joins in the panel's opinion and concurs by
separate opinion.

GLENN L. HARA (Aytan Y. Bellin, Bellin &
Associates LLC, White Plains, NY, on the
brief), Anderson & Wanda, White Plains, NY,
for Plaintiff-Appellant.

THOMAS D. GOLDBERG (Bryan J. Orticelli, Day
Pitney LLP, Stamford, CT, Matthew H. Geelan,
Donahue, Durham & Noonan, P.C., Guilford, CT,
on the brief),Day Pitney LLP, Stamford, CT,
for Defendants-Appellees.

WINTER, Circuit Judge:

Physicians Healthsource appeals from Judge Underhill's
dismissal of its class action complaint asserting violations of
the Telephone Consumer Protection Act of 1991, as amended by the
Junk Fax Protection Act of 2005, 47 U.S.C. § 227 (the TCPA).  The
complaint alleges that appellees (collectively "Boehringer") sent
an unsolicited fax invitation for a free dinner meeting to
discuss ailments relating to appellees' business.  According to
appellant, this fax constituted an "unsolicited advertisement"
prohibited by the TCPA.

Judge Underhill dismissed appellant's complaint for failure
to state a claim -- holding that no facts were pled that
plausibly showed that the fax had a commercial purpose.  While we
agree that a fax must have a commercial purpose to be an
"unsolicited advertisement," we hold that the district court
improperly dismissed appellant's complaint.  Where it is alleged

1    that a firm sent an unsolicited fax promoting a free event

2    discussing a subject related to the firm's business, the

3    complaint is sufficient to state a claim.

4         We therefore vacate and remand.

5                              BACKGROUND

6         In reviewing a Fed. R. Civ. P. 12(b)(6) dismissal of a

7    complaint, we accept all factual allegations as true, drawing all

8    reasonable inferences in the plaintiff's favor.  See Chambers v.

9    Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

10        The complaint alleges that, on April 6, 2010, Boehringer, a

11   pharmaceutical company, sent an unsolicited fax to appellant,

12   inviting one of appellant's doctors to a free "dinner meeting"

13   and discussion entitled, "It's time to Talk:  Recognizing Female

14   Sexual Dysfunction (FSD) and Diagnosing Hypoactive Sexual Desire

15   Disorder (HSDD)."  J. App'x at 24.  The "invitation" stated that

16              Boehringer Ingelheim Pharmaceuticals, Inc.
17              cordially invites you to join us for a dinner
18              meeting entitled, It's Time to Talk:
19              Recognizing Female Sexual Dysfunction and
20              Diagnosing Hypoactive Sexual Desire Disorder.
21              Based on recent data from a large US study
22              (PRESIDE), 43% of US women aged > 18 years
23              have experienced a sexual problem in their
24              lives and 9.5% of the same group of women
25              have experienced decreased sexual desire with
26              distress.  This program has been developed to
27              discuss Female Sexual Dysfunction (FSD),
28              including Hypoactive Sexual Desire Disorder
29              (HSDD) including pathophysiology models,
30              epidemiology, and diagnosis.  We hope you
31              will join us for this informative and
32              stimulating program.
33

                              3

1    _Id._  The fax provided registration details and revealed that the

2    speaker at the dinner meeting would be David Portman, MD.

3    On March 30, 2014, appellant filed a class action lawsuit on

4    behalf of more than forty individuals against Boehringer,

5    alleging that the fax violated the TCPA as an "unsolicited

6    advertisement" without a proper opt-out notice.  _Id._ at 11.

7    According to the complaint, the fax was an "unsolicited

8    advertisement" because it "promote[d] the services and goods of

9    [Boehringer]."  _Id._  Appellant sought an award of statutory

10   damages in the minimum amount of $500 for each violation of the

11   TCPA, and to have such damages trebled.  Appellant also requested

12   injunctive relief to enjoin Boehringer from sending similar faxes

13   in the future.

14   Boehringer moved to dismiss, arguing that appellant failed

15   to state a claim under the TCPA because the unsolicited fax was

16   not an advertisement.  In its motion to dismiss, Boehringer asked

17   the district court to take judicial notice of public records of

18   the Food and Drug Administration (FDA) -- a request that was

19   unopposed and that the court granted.  These records showed that,

20   at the time it faxed appellant, Boehringer had submitted for

21   approval by the FDA to market a drug named Flibanserin.  The drug

22   was intended to treat HSDD.  Because Flibanserin had yet to be

23   approved by the FDA, Boehringer was forbidden to promote it.

24   _See_ 21 C.F.R. § 312.7(a)(prohibiting, _inter alia_, pharmaceutical

25   companies from "promoting" drugs not yet approved by the FDA).

1       The district court dismissed the complaint for failure to

2   state a claim under Fed. R. Civ. P. 12(b)(6).  Physicians

3   Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.,

4   No. 3:14-CV-405 (SRU), 2015 WL 144728, at *6 (D. Conn. Jan. 12,

5   2015).  The court interpreted Federal Communications Commission

6   (FCC) regulations as "requir[ing] plaintiffs to show that [an

7   unsolicited] fax has a commercial pretext" for it to violate the

8   TCPA.  Id. at *3.  The court determined that "[n]othing in the

9   [f]ax indicates that the dinner was a pretext for pitching a

10  Boehringer product or service."  Id. at *5.  The court noted

11  that, "[e]ven drawing the inference that Boehringer sponsored the

12  dinner in order to inform potential future prescribers of

13  Flibanserin about the existence and nature of HSDD, the

14  hypothetical future economic benefit that the Boehringer

15  defendants might receive someday does not transform the [f]ax

16  into an advertisement."  Id.

17                              DISCUSSION

18      As noted, we review de novo a district court's dismissal of

19  a complaint pursuant to Rule 12(b)(6).  See Chambers, 282 F.3d at

20  152.  To survive a motion to dismiss, a complaint must contain

21  sufficient factual matter, accepted as true, to "state a claim to

22  relief that is plausible on its face."  Bell Atl. Corp. v.

23  Twombly, 550 U.S. 544, 570 (2007).  As the Supreme Court has

24  stated,

> A claim has facial plausibility when the
> plaintiff pleads factual content that allows
> the court to draw the reasonable inference
> that the defendant is liable for the
> misconduct alleged.  The plausibility
> standard is not akin to a "probability
> requirement," but it asks for more than a
> sheer possibility that a defendant has acted
> unlawfully.  Where a complaint pleads facts
> that are "merely consistent with" a
> defendant's liability, it "stops short of the
> line between possibility and plausibility of
> 'entitlement to relief.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted)

(quoting Twombly, 550 U.S. at 557).

Under the TCPA, it is unlawful for "any person within the United States" to send a fax that is an "unsolicited advertisement" -- unless, inter alia, the fax has an opt-out notice meeting certain requirements.  47 U.S.C. § 227(b)(1)(C).  The Act creates a private right of action, providing for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations.  47 U.S.C. § 227(b)(3).

The parties do not dispute that Boehringer's fax lacked any opt-out notice, and the question is, therefore, whether it was an "unsolicited advertisement."  The Act defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 227(a)(5).  Exercising its delegated rulemaking authority over

6

the TCPA pursuant to 47 U.S.C. § 227(b)(2), the FCC has
promulgated a rule elaborating on the Act's definition of
"unsolicited advertisement."  Rules and Regulations Implementing
the Tel. Consumer Prot. Act of 1991; Junk Fax Prevention Act of
2005, 71 Fed. Reg. 25967, 25973 (May 3, 2006) (the "2006 Rule").
The 2006 Rule states, in relevant part, that

> facsimile messages that promote goods or
> services even at no cost, such as free
> magazine subscriptions, catalogs, or free
> consultations or seminars, are unsolicited
> advertisements under the TCPA's definition.
> In many instances, "free" seminars serve as a
> pretext to advertise commercial products and
> services. Similarly, "free" publications are
> often part of an overall marketing campaign
> to sell property, goods, or services.  For
> instance, while the publication itself may be
> offered at no cost to the facsimile
> recipient, the products promoted within the
> publication are often commercially available.
> Based on this, it is reasonable to presume
> that such messages describe the "quality of
> any property, goods, or services."
> Therefore, facsimile communications regarding
> such free goods and services, if not purely
> "transactional," would require the sender to
> obtain the recipient's permission beforehand,
> in the absence of an [established business
> relationship].

Id.  The Rule itself comports with the statutory language, which
defines offending advertisements as those promoting "the
commercial availability or quality of [the firm's] property,
goods, or services."  47 U.S.C. § 227(a)(5).

The district court interpreted the Rule as "requir[ing]
plaintiffs to show that the fax has a commercial pretext -- i.e.,
'that the defendant advertised, or planned to advertise, its

1    products or services at the seminar.'"  Physicians Healthsource,

2    2015 WL 144728, at *3 (quoting Bais Yaakov of Spring Valley v.

3    Richmond, the Am. Int'l Univ. in London, Inc., No. 13-CV-4564

4    (CS), 2014 WL 4626230, at *3 (S.D.N.Y. Sept. 16, 2014)).  We do

5    not disagree.  But, at the pleading stage, where it is alleged

6    that a firm sent an unsolicited fax promoting a free seminar

7    discussing a subject that relates to the firm's products or

8    services, there is a plausible conclusion that the fax had the

9    commercial purpose of promoting those products or services.

10   Businesses are always eager to promote their wares and usually do

11   not fund presentations for no business purpose.  The defendant

12   can rebut such an inference by showing that it did not or would

13   not advertise its products or services at the seminar, but only

14   after discovery.  This interpretation comports with the 2006

15   Rule.  "In interpreting an administrative regulation, as in

16   interpreting a statute, we must begin by examining the language

17   of the provision at issue."  Resnik v. Swartz, 303 F.3d 147, 151

18   (2d Cir. 2002).  The 2006 Rule states that "it is reasonable to

19   presume that such messages [advertising free seminars] describe

20   the 'quality of any property, goods, or services,'" potentially

21   violating the TCPA.  2006 Rule, 71 Fed. Reg. at 25973 (quoting 47

22   U.S.C. § 227(a)(3)).

8

1     Of course, as other courts have ruled,[1] not every

2    unsolicited fax promoting a free seminar satisfies the Rule.

3    There must be a commercial nexus to a firm's business, i.e., its

4    property, products, or services; that, in our view, is satisfied

5    at the pleading stage where facts are alleged that the subject of

6    the free seminar relates to that business.  The Rule does not aim

7    at faxes promoting free seminars _per se_,[2] but states only that,

8    "[i]n many instances, 'free' seminars serve as a pretext to

---

[1] _See_ _Physicians Healthsource, Inc. v. Stryker Sales Corp._, 65 F. Supp. 3d 482, 489 (W.D. Mich. 2015); _Bais Yaakov of Spring Valley v. Richmond, the Am. Int'l Univ. in London, Inc._, No. 13-CV-4564 (CS), 2014 WL 4626230, at *3 (S.D.N.Y. Sept. 16, 2014) ("While the [2006 Rule] could be read to categorize all faxes promoting free seminars as unsolicited advertisements, many courts require plaintiffs to show that the defendant advertised, or planned to advertise, its products or services at the seminar."); _Addison Automatics, Inc. v. RTC Group, Inc._, No. 12 C 9869, 2013 WL 3771423, at *2 (N.D. Ill. July 16, 2013) ("[F]axes promoting free seminars may be unsolicited advertisements because free seminars are often a pretext to market products or services.") (internal quotation marks omitted); _St. Louis Heart Center, Inc. v. Forest Pharms., Inc._, No. 4:12-CV-02224, 2013 WL 1076540, at *4 (E.D. Mo. Mar. 13, 2013); _Phillips Long Dang, D.C., P.C. v. XLHealth Corp._, No. 1:09-CV-1076-RWS, 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) ("[T]he Court does not read the FCC Promulgation as creating a per se ban on free seminar communications.").

[2] Appellant relies on another provision of the 2006 Rule -- that "applications and materials regarding educational opportunities and conferences sent to persons who are not yet participating or enrolled in such programs are unsolicited advertisements," 2006 Rule, 71 Fed. Reg. at 25973 -- to support its argument that faxes promoting free seminars are _per se_ violations of the TCPA.  We are unconvinced.  The cited provision targets pretextual materials that promote, for example, enrollment at particular educational institutions; it does not purport to create a _per se_ rule of the sort appellant advances. _See_ 2006 Rule, 71 Fed. Reg. at 25974.

1    advertise commercial products and services."  2006 Rule, 71 Fed.

2    Reg. at 25973 ("[M]essages that promote goods and services even

3    at no cost, such as . . . free . . . seminars, are unsolicited

4    advertisements under the TCPA's definition.").  In a different

5    but relevant context, the Rule states that "a trade

6    organization's newsletter sent via facsimile would not constitute

7    an unsolicited advertisement, so long as the newsletter's primary

8    purpose is informational, rather than to promote commercial

9    products."  Id.

10        Requiring plaintiffs to plead specific facts alleging that

11   specific products or services would be, or were, promoted at the

12   free seminar would impede the purposes of the TCPA.  See Gager v.

13   Dell Fin. Servs., LLC, 727 F.3d 265, 271 (3d Cir. 2013) ("Because

14   the TCPA is a remedial statute, it should be construed to benefit

15   consumers."); Physicians Healthsource, Inc. v. Alma Lasers, Inc.,

16   No. 12 C 4978, 2012 WL 4120506, at *2 (N.D. Ill. Sept. 18, 2012)

17   ("Congress enacted the TCPA to prevent the shifting of

18   advertising costs to recipients of unsolicited fax

19   advertisements.") (citing H.R. Rep. No. 102-317, at 10 (1991); S.

20   Rep. No. 102-78, at 2, 5 (1991), reprinted in 1991 U.S.C.C.A.N.

21   1968, 1972 ("[U]nsolicited calls placed to fax machines, and

22   cellular or paging telephone numbers often impose a cost on the

23   called party (fax messages require the called party to pay for

24   the paper used . . .)")).  And -- unless plaintiffs actually

25   attended the free seminar -- in many cases it will be difficult

1  for plaintiffs to know whether it was in fact used to advertise a
2  defendant's products or services.  See Arista Records, LLC v. Doe
3  3, 604 F.3d 110, 120 (2d Cir. 2010) ("The Twombly plausibility
4  standard, which applies to all civil actions . . . does not
5  prevent a plaintiff from pleading facts alleged upon information
6  and belief where the facts are peculiarly within the possession
7  and control of the defendant.") (internal quotation marks
8  omitted).

9  　　　Two fanciful examples illustrate the distinction.  If a
10  complaint alleged that the Handy Widget Company funded a
11  professorship at a local law school in the name of its deceased
12  founder and faxed invitations on its letterhead to an inaugural
13  lecture entitled "The Relevance of Greek Philosophers to
14  Deconstructionism," the complaint would not state a claim under
15  the TCPA because the Handy Widget Company is not in the business
16  of philosophical musings.  In contrast, if the Handy Widget
17  Company faxed invitations to a free seminar on increasing
18  widgets' usefulness and productivity, a claim under the TCPA
19  would be validly alleged.  Of course, the Handy Widget Company
20  could rebut at the summary judgment stage with evidence showing
21  that it did not feature its products or services at the seminar.

22  　　　Boehringer's fax advertised a "dinner meeting" to discuss
23  two medical conditions -- Female Sexual Dysfunction (FSD) and
24  Hypoactive Sexual Desire Disorder (HSDD) -- and their
25  "pathophysiology models, epidemiology, and diagnosis."  J. App'x

1   at 24.  As a pharmaceutical company, Boehringer was generally in

2   the business of treating diseases and medical conditions, such as

3   FSD and HSDD.  Moreover, the fax makes clear to the invitee that

4   the dinner meeting was "sponsored by Boehringer Ingelheim

5   Pharmaceuticals, Inc."  Id.  The fax invitation was sent to a

6   doctor, whom Boehringer would presumably hope to persuade to

7   prescribe its drugs to patients.  Therefore, facts were alleged

8   that Boehringer's fax advertised a free seminar relating to its

9   business.

10      In addition, Boehringer's seeking approval from the FDA for

11  the marketing of Flibanserin is relevant, although not

12  dispositive.  Although not approved, the drug is intended as a

13  remedy for the ailments to be discussed at the event.  To be

14  sure, Boehringer was prohibited from, inter alia, "promoting" an

15  unapproved drug, 21 C.F.R. § 312.7(a), but that prohibition is

16  not necessarily inconsistent with the free dinner's mentioning

17  the possible future availability of the drug.  Nothing in the

18  statute or Rule limits their scope to the advertisement of

19  products or services then available.

20      In defense, Boehringer can present, inter alia, testimony of

21  the dinner meeting participants as well as provide the meeting's

22  agenda, transcript, presentation slides, speaker list, or any

23  internal emails or correspondences discussing the meeting.  See

24  Physicians Healthsource, Inc. v. Stryker Sales Corp., 65 F. Supp.

25  3d 482, 492 (W.D. Mich. 2015) (holding that "the TCPA's text does

1    not require a court to put on evidentiary blinders in deciding

2    whether a particular fax amounts to an advertisement" and

3    allowing parties to present evidence beyond the four corners of

4    the fax -- such as presentation slides -- to determine if a fax

5    promoting a free seminar was pretextual).  It is also possible

6    that Boehringer used the seminar to advertise other drugs or

7    services in its inventory -- which would certainly support

8    finding a violation of the TCPA.

9                                   CONCLUSION

10       For the foregoing reasons, we vacate and remand for further

11   proceedings consistent with this opinion.

12

1    LEVAL, <u>Circuit Judge</u>, concurring:

2        I concur in my colleagues' opinion. I agree fully that the Complaint

3    plausibly states a claim under 42 U.S.C. §§ 227(b)(1)(C) and (a)(5), as elucidated

4    by the 2006 Rule promulgated by the Federal Communications Commission (FCC

5    or the Commission), 71 Fed. Reg. 25967, 25973 (May 3, 2006).

6        I write separately, however, speaking for myself alone, and speaking only to

7    state courts and federal courts outside this circuit, to air a somewhat different

8    possible understanding of the 2006 Rule, which, while supporting the same

9    conclusion as to the sufficiency of the Complaint, may better reflect the text of the

10   Commission's Rule.

11       The Complaint alleges that the Defendant, Boehringer Ingelheim

12   Pharmaceuticals, Inc., sent an unsolicited fax message (without the required opt-

13   out notice) to the Plaintiff, Physicians Healthsource, Inc. (as well as to other

14   doctors).[1] The fax message invited Dr. Jose Martinez (apparently one of the

15   doctors of Physicians Healthsource) to a free dinner and lecture sponsored by the

16   Defendant, at which David Portman, M.D., would discuss Female Sexual

17   Dysfunction (FSD) and Hypoactive Sexual Desire Disorder (HSDD).[2] At the

18   Defendant's request, in deciding the motions to dismiss the Complaint, the court

---

[1] In this opinion, the Defendants are collectively referred to as the "Defendant."

[2] A note on the fax message indicated that the invitation was extended only to healthcare professionals, and not to their spouses or guests.

1

took judicial notice of records of the Food and Drug Administration (FDA)

showing that the Defendant had submitted an application for the FDA's approval

to market a new drug (flibanserin) for the treatment of HSDD, the condition that

was to be the subject of the free lecture.

The Defendant argued in the district court that because its fax transmission

consisted of an invitation to a free dinner and lecture, and did not on its face make

any suggestion of a commercial nature or refer in any way to flibanserin, it did not

come within the statute's definition of an unsolicited advertisement: "material

advertising the commercial availability or quality of any property, goods, or

services." 47 U.S.C. § 227(a)(5). The Plaintiff countered that the FCC's 2006 Rule

made clear, for purposes of the statute, that an unsolicited facsimile message

promoting free goods and services is an unsolicited advertisement. The Plaintiff

argued further that, given the Defendant's pending application for FDA approval to

market a drug for the treatment of HSDD, and the allegation of an invitation

addressed to doctors to hear a medical lecture about HSDD, the Complaint

plausibly alleged an overall marketing campaign and commercial purpose to get

the doctors to prescribe the Defendant's drug to patients suffering from HSDD,

once the Defendant obtained FDA approval for the drug. The district court

accepted the Defendant's arguments and dismissed the Complaint.

2

1    The majority opinion reverses the district court's dismissal of the Complaint,

2    essentially adopting the Plaintiff's fallback argument— that, in view of the

3    Defendant's intention to market a drug for the treatment of HSDD, its offer of a

4    free seminar for doctors discussing HSDD is plausibly alleged to be a

5    commercially motivated advertisement of its product. On the other hand, the

6    majority opinion rejects the Plaintiff's argument that the FCC's 2006 Rule treats

7    this offer of a free seminar *per se* as an advertisement of "the commercial

8    availability" of a product. It reasons that the fax offering free goods or services

9    would constitute an advertisement only if the offer of the free seminar turned out to

10   be a pretext or prelude for a commercial promotion, and asserts that the Defendant

11   "can rebut such an inference [of intent to promote a commercial product] by

12   showing [after discovery] that it did not or would not advertise its products or

13   services at the seminar." Maj. Op. 8. Although recognizing that "[b]usinesses are

14   always eager to promote their wares and usually do not fund presentations for no

15   business purpose," the opinion asserts that, if the defendant can show after

16   discovery that at the free dinner and seminar no reference whatsoever was made to

17   the Defendant's drug for treatment of HSDD (or any other products or services it

18   offered), the Defendant would prevail in the litigation. *Id.* at 8, 12–13.

19   I agree fully with the majority's conclusion that the Complaint, as

20   supplemented by the information about the Defendant's commercial product that

3

1   the Defendant added to the record on the motion to dismiss, plausibly supports an

2   intention on the part of the Defendant to foster future sales of its drug. It seems

3   obvious that, when a pharmaceutical company, which is preparing to market a drug

4   for the treatment of HSDD, invites doctors to a free dinner and lecture on HSDD,

5   the objective of the event is to get doctors to eventually prescribe the company's

6   drug to their patients, even though the company might be forced by legal

7   requirements not to speak about the drug itself (as opposed to the condition) until

8   FDA approval is secured.

9       I believe, in addition, that other courts might read the FCC's 2006 Rule to

10   mean that, at least when sent by commercial, profit-motivated entities, faxes

11   offering free goods or services are deemed to be advertisements (and "unsolicited

12   advertisements" if sent without the prior permission of the recipient), regardless of

13   whether the offer of free goods and services was a pretext or preliminary to explicit

14   promotion of commercial products and services.

15       In enacting the Telephone Consumer Protection Act of 1991, as amended by

16   the Junk Fax Prevention Act of 2005, Congress undertook to limit the use in

17   commerce of certain methods of communication that impose costs, hardships, and

18   annoyances on unwilling recipients. Section 227 focuses, in part, on the

19   transmission of "unsolicited advertisement[s]" to "telephone facsimile machine[s]"

1  (fax machines).[3] The sending of "unsolicited advertisements" to a fax machine is

2  expressly prohibited except in specified circumstances (which include the

3  requirement that the message include a notice (conforming to specifications) that

4  the recipient may opt out of further receipt of such messages). *See* 47 U.S.C. §

5  227(b)(1)(C) ("It shall be unlawful for any person within the United States . . . to

6  send, to a telephone facsimile machine, *an unsolicited advertisement,* unless . . . ."

7  (emphasis added)).[4]

8      The statute defines "unsolicited advertisement" to mean "any material

9  advertising the commercial availability or quality of any property, goods, or

10  services which is transmitted to any person without that person's prior express

11  invitation or permission." *Id.* § 227(a)(5). The statute goes on to direct the FCC to

12  "prescribe regulations to implement the requirements of this subsection" and to

13  "initiate a rulemaking proceeding concerning the need to protect residential

14  telephone subscribers' privacy rights to avoid receiving telephone solicitations to

---

[3] The menace to the public represented by unsolicited advertisements sent by fax has mercifully diminished since the passage of the Act, as newer means of communication have supplanted the fax and far fewer consumers now possess fax machines. Nonetheless, usage of fax machines continues, and, for those who use them, the problem that led Congress to pass the Junk Fax Prevention Act persists.

[4] An "unsolicited advertisement" may not be sent to a fax machine unless (1) "the sender [has] an established business relationship with the recipient," (2) the "sender obtained the number of the telephone facsimile machine" in a manner permitted by the statute, and (3) the unsolicited advertisement contains a "clear and conspicuous" opt-out notice on the first page which meets various statutory specifications. 47 U.S.C. §§ 227 (b)(1)(C) & (2)(D).

1    which they object." *See id.* §§ 227(b)(2) and (c)(1). The FCC promulgated the

2    2006 Rule.

3         The 2006 Rule is not written in the manner of a conventional regulation. It is

4    a rambling 22-page discussion, in which some sentences assert normative rules and

5    definitions, others describe arguments that have been submitted to the agency by

6    commentators and the Commission's responses to them, and yet others explain the

7    Commission's observations and reasoning that led it to its conclusions.

8         A chapter of the 2006 Rule specifically addresses facsimile messages that

9    contain "Offers for Free Goods and Services," and the question whether such

10   messages constitute "unsolicited advertisements."[5]

---

[5] The pertinent passage reads:

*Offers for Free Goods and Services and Informational Messages*
The Commission concludes that facsimile messages that promote
goods or services even at no cost, such as free magazine subscriptions,
catalogs, or free consultations or seminars, are unsolicited
advertisements under the TCPA's definition. In many instances,
"free" seminars serve as a pretext to advertise commercial products
and services. Similarly, "free" publications are often part of an overall
marketing campaign to sell property, goods, or services. For instance,
while the publication itself may be offered at no cost to the facsimile
recipient, the products promoted within the publication are often
commercially available. Based on this, it is reasonable to presume that
such messages describe the "quality of any property, goods, or
services." Therefore, facsimile communications regarding such free
goods and services, if not purely "transactional," would require the

If one reads this passage precisely, sentence by sentence, giving each sentence its natural meaning, it can be read to establish a rule that differs significantly from the majority opinion's interpretation of it.

The first sentence can be read to state a categorical conclusion as to the meaning of "unsolicited advertisement" as applied to faxes that offer free goods or services.

> The Commission concludes that facsimile messages that promote goods or services even at no cost, such as free magazine subscriptions, catalogs, or free consultations or seminars, *are* unsolicited advertisements under the TCPA's definition.

2006 Rule, 71 Fed. Reg. at 25973 (emphasis added).

The next four sentences appear to recount what the Commission observed and how those observations led it to adopt the categorical rule stated in the first sentence. These four sentences explain:

> In many instances, "free" seminars serve as a pretext to advertise commercial products and services. Similarly, "free" publications are often part of an overall marketing campaign to sell property, goods, or services. For instance, while the publication itself may be offered at no cost to the facsimile recipient, the products promoted within the publication are often commercially available. Based on this, it is reasonable to presume that such messages describe the "quality of any property, goods, or services."

*Id.*

---

sender to obtain the recipient's permission beforehand, in the absence of an [established business relationship].
2006 Rule, 71 Fed. Reg. at 25973.

1    The final sentence of the passage follows the Commission's factual

2    observations described in the prior four sentences with the word, "Therefore," and

3    then essentially restates the categorical rule of the first sentence—that facsimile

4    messages offering free goods and services are treated as advertisements,[6] so that

5    the sender must "obtain the recipient's permission beforehand, in the absence of an

6    [established business relationship]." *Id.*

7    In view of the apparently categorical assertion of the first sentence (repeated

8    in substance in the final sentence)—that "facsimile messages that promote goods

9    or services even at no cost . . . are unsolicited advertisements under the TCPA's

10   definition"—another court might well disagree with the majority opinion's view

11   that the Rule "does not aim at faxes promoting free seminars *per se*." Maj. Op. 9.

12   Nothing in the text suggests that the Commission's observation of the frequency

13   with which free offers lead to commercial solicitation was intended as limiting the

14   Commission's categorical proposition announced in the first sentence, rather than

15   providing an explanation for it.

---

[6] The final sentence includes the qualification, "if not purely 'transactional.'" This
qualification has no bearing on our analysis. The immediately preceding passage of
the 2006 Rule explains that "'Transactional' Communications," those "whose
purpose is to facilitate, complete, or confirm a commercial transaction that the
recipient has previously agreed to enter into with the sender[,] are not
advertisements for purposes of the TCPA's facsimile advertising rules." 2006
Rule, 71 Fed. Reg. at 25972.

In addition, a court might conclude that the majority opinion's selective quotation and characterization of the last two sentences of the passage on free goods and services change their meaning. The majority opinion describes the 2006 Rule as stating that, because of the reasonableness of the presumption adopted by the FCC that messages advertising free seminars in fact describe the "quality of any property, goods, or services," such messages "*potentially* violat[e] the TCPA." *Id.* at 8. The 2006 Rule, however, after noting the reasonableness of that presumption, goes on to say that fax messages offering free goods and services "*[t]herefore . . . would require* the sender to obtain the recipient's permission beforehand." 2006 Rule, 71 Fed. Reg. at 25973 (emphasis added). This passage, read literally, says that, unless the recipient gave permission, the fax message offering free goods or services does violate the TCPA—not that it "potentially" violates the TCPA.

The 2006 Rule, in other words, can be read to say, in sum: Because of the frequency, observed by the Commission, that messages offering free goods or services in fact mask or precede efforts to sell something, the Commission has adopted a prophylactic presumption that fax messages offering free goods or services *are* advertisements and thus *are* prohibited by § 277 (unless they are either sent with the consent of the recipient or meet the requirements for the statutory exception).

9

1    One might ask why the Commission would adopt this presumption rather

2    than letting it be determined in litigation whether one who accepted the offer of

3    free goods or services would ultimately confront an attempt to sell something. The

4    Commission did not explain its reasons. One can well surmise, however, that

5    because the statute generally offers plaintiffs a maximum award of $500 in

6    statutory damages,[7] the statute's efficacy in controlling nuisance faxes would be

7    nullified if a plaintiff needed to spend thousands of dollars in discovery litigation

8    to win a much smaller award. And as to the risk that a sender might be held liable

9    in circumstances where its offer of free goods did not lead to an attempt to sell, the

10   Commission could take comfort in (1) its determination that this would occur

11   infrequently, and (2) the near certainty that the damages award inflicted on the

12   defendant would be negligible—even less than the litigation cost of making a

13   motion to dismiss.

14   I recognize that there is a significant argument against this literal reading of

15   the Commission's Rule. If this passage is read to apply universally to *all* "facsimile

16   messages that promote goods or services . . . at no cost," this would mean that fax

17   messages sent by charitable, nonprofit entities for the sole purpose of alerting

18   intended beneficiaries to the availability of charitable offerings would incur

_____

[7] Plaintiffs may recover their "actual monetary loss" or "$500 in damages for each
[ ] violation, whichever is greater." 47 U.S.C. § 227(b)(3)(B). Absent truly
exceptional circumstances, $500 will likely far exceed a plaintiff's actual monetary
loss caused by receipt of an unsolicited fax.

10

1    liability. Because the governing statute imposes liability for fax transmissions only

2    on "material advertising the commercial availability or quality of any property,

3    goods, or services," *see* § 227(a)(5), it is at least doubtful whether the Commission

4    can lawfully impose a rule requiring that the statute be read to impose liability for

5    faxes sent by charitable nonprofit organizations with no objective other than to

6    give away free goods or services.

7        There are, however, answers to this objection. Notwithstanding the breadth

8    of the Commission's language in the first and last sentences of the quoted

9    paragraph concerning Offers for Free Goods and Services, it is doubtful whether

10    the Commission intended this broad categorical rule to apply to offers of free

11    goods and services by nonprofit entities. Both the statute[8] and the 2006 Rule

12    communicate an intention that nonprofits be treated differently, at least in some

13    respects, from commercial entities. In a separate portion of the 2006 Rule, the

14    Commission set forth some discussion of how the statute treats nonprofits,

15    suggesting that nonprofits are not covered by the otherwise categorical rule treating

16    faxes offering free goods and services as advertisements.[9]

---

[8] *See* 47 U.S.C. § 227(a)(4) (defining "telephone solicitation," another form of communication governed by the statute, expressly to exclude "a call or message . . . by a tax exempt, nonprofit organization").

[9] Section 227(b)(2)(F) of the statute authorizes the Commission to issue a regulation exempting nonprofit professional or trade associations from the requirement to include an opt-out notice on unsolicited fax advertisements sent to

11

1  While neither the TCPA nor its amendments carve out an exemption
2  for nonprofits from the facsimile advertising rules, the Commission
3  agrees with those petitioners that argue that messages that are not
4  commercial in nature—which many nonprofits send—do not
5  constitute "unsolicited advertisements" and are therefore not covered
6  by the facsimile advertising prohibition. ( . . . [C]onsistent with the
7  language of the TCPA, the Commission does not intend for the
8  clarifications in this Order to result in the regulation of
9  noncommercial speech as commercial facsimile messages under the
10  TCPA regulatory scheme.) The Commission clarifies that messages
11  that do not promote a commercial product or service, including all
12  messages involving political or religious discourse, such as a request
13  for a donation to a political campaign, political action committee or
14  charitable organization, are not unsolicited advertisements under the
15  TCPA. ( . . . [T]he fact that a political message contains an offer to
16  attend a fundraising dinner or to purchase some other product or
17  service in connection with a political campaign or committee
18  fundraiser does not turn the message into an advertisement for
19  purposes of the TCPA's facsimile advertising rules.)
20
21  2006 Rule, 71 Fed. Reg. at 25972.

22  The Commission's observations about nonprofits in this passage—that they

23  send noncommercial messages and that such messages, including, for example,

24  offers to attend fundraising dinners, are not advertisements—seem inconsistent

25  with applying to nonprofits the apparently unqualified rule in the provision

26  regarding Offers of Free Goods and Services. As a result, a court might conclude

27  that the Commission intended the "Free Goods and Services" provision to apply to

28  faxed offers by commercial entities, and not to similar faxes sent by nonprofits. It

their members. The Commission declined to create that exemption, however, in
part because of the benefits of the notice to recipients, and in part because
inclusion of the notice is not a burdensome obligation. *See* 2006 Rule, 71 Fed. Reg.
at 25971.

1   is, furthermore, unlikely that the 2006 Rule's statement about the frequency with

2   which offers of free goods and services are prefatory to commercial advertisement

3   was predicated on the Commission's observation of such offers *by nonprofits*. If a

4   court, therefore, faced a suit brought against a nonprofit, based on a faxed offer to

5   distribute free benefits, the court might conclude that the Commission's 2006 Rule

6   simply does not address that circumstance, so that the case should be adjudicated

7   solely by reference to the provisions of the statute, which would presumably

8   support the conclusion that a nonprofit's fax offering free goods or services was

9   not an unsolicited advertisement.

10      While I concur in the panel opinion, ruling that the Complaint states a claim,

11  I note that other courts might interpret the Commission's 2006 Rule differently.